UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

MICHELLE JOHNSON,

    Plaintiff,

    v.                                      Case No. 05-C-73

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.
_____

# O R D E R

    Plaintiff Michelle Johnson filed an action for judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits and Supplemental Security Income under Title XVI of the Social Security Act. 42 U.S.C. §§ 402(e), 405(g), 1381. Johnson filed her application for benefits in September 2001, alleging disability beginning on May 1, 2000, due to joint weakness, respiratory problems, and blurred vision. The Social Security Agency (the "Agency") denied the applications at the initial and reconsideration levels.

    On June 8, 2004, a hearing was held before an Administrative Law Judge ("ALJ"), at which Johnson testified. She was not represented by counsel. On July 30, 2004, the ALJ applied the Agency's five-step sequential evaluation and found Johnson retained the residual functional capacity ("RFC") to perform

sedentary work. Based on her RFC and vocational profile, the ALJ found Johnson could perform a significant number of jobs. As such, the ALJ found Johnson was not disabled within the meaning of the Social Security Act.

Here are the relevant facts: Johnson was born in 1965, and she was 39 years old at the time the ALJ rendered her decision. Johnson has a high school education and work history which includes a series of short-term jobs. At the hearing before the ALJ, she testified she most recently worked full-time at a carwash on and off for approximately 4 years, and she testified she last worked in July 2002. Johnson alleged she was totally disabled due to pain in her liver and kidneys, acid reflux, leg pain and swelling, blurry vision, and shortness of breath upon exertion. She also reported her medication side effects included hair loss, nausea, and blurry vision. She testified her daily activities include watching television, reading, and doing some dusting. She testified her roommate did most of the cleaning, cooking, and shopping. She alleged she had difficulty with standing and lifting.

Maria Ignacio, M.D., noted on July 7, 1998, that Johnson had a history of pain and redness in her eyes, blurry vision, headaches, nausea and "burning" in her stomach (which could be relieved with medication). Ignacio's notes also state Johnson reported a history of left knee pain but ambulated without difficulty. An x-ray from November 1998 revealed large bi-lateral lymph nodes consistent with

Sarcoidosis. Ignacio's notes from January 22, 1999, state Johnson complained of pain in her back, abdomen, and left side. It was noted she was diagnosed with reflux disease and flank pain, and had a history of high cholesterol and Sarcoidosis. The ultrasound of her abdomen was normal.

On July 10, 2001, Johnson sought treatment for a rash "all over her body"; she denied itching, headache, coughing, sore throat, or abdominal pain. An examination of her lungs and heart was normal. On July 17, 2001, Johnson still had a rash on her arms and legs though there was some improvement. She reported arthralgia pain on that date. On October 15, 2001, Johnson reported blurry vision and leg pain. On December 10, 2001, she reported left shoulder pain which she related to a recent car accident.

In February 2002, a state agency physician reviewed Johnson's medical records and assessed her ability to perform work-related activities. The physician opined Johnson could perform work that required occasionally lifting 20 pounds, frequently lifting 10 pounds, and sitting or standing and walking for about 6 hours each in an 8-hour workday.

On July 18, 2002, Johnson reported a light rash all over her body, multiple joint pain, and blurry vision. No physical examination was performed. On August 2, 2002, Johnson's rash was somewhat improved though she reported mild

itching and sensitivity to light. In September 2002, Johnson was treated for a kidney or urinary tract infection.

On November 23, 2002, Johnson underwent a consultative examination with Mohammad Fareed, M.D. She reported a history of rash, blurry vision, painful joints, and recurrent urinary tract infections. She reported she could walk without difficulty except that she became short of breath after walking several blocks. She estimated she could stand for no more than 2 hours and lift between 25 and 30 pounds. Johnson's visual acuity was normal with both eyes without correction, and she was comfortable during the examination with no mobility problems. She had hypopigmented circles on her arms and legs, but no active skin lesions and no evidence of ongoing rash. The physical examination was otherwise normal and revealed no swelling or redness in the joints, a good range of motion in all joints, normal reflexes and sensations, and normal gait.

In August 2003, an x-ray was compatible with Johnson's known diagnosis of Sarcoidosis. On August 26, 2003, Kurt Oelke, M.D., examined Johnson for her multiple joint complaints. Other than some modestly restricted range of motion in her left shoulder, the physical examination was entirely normal. On September 23, 2003, Oelke's most significant finding was warmth and tenderness in Johnson's left knee. On October 27, 2003, Johnson complained of "bad" abdominal pain, but an abdominal examination was normal. On November 19,

2003, another abdominal examination was normal. Oelke noted Johnson's Sarcoidosis was stable with some lingering subjective shortness of breath, and Johnson complained of burning stomach pain at night. Oelke noted Johnson's Sarcoidosis was stable with some lingering subjective shortness of breath.

On January 6, 2004, Johnson's primary complaint was leg pain. There were no significant joint findings upon examination, and Oelke again noted Johnson's Sarcoidosis was stable. Johnson complained of left-sided chest pain in February and March 2004, although she denied shortness of breath. There were no significant findings upon examination.

A claimant qualifies for disability benefits if she is "disabled" within the meaning of the Social Security Act. The Act defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(C). The Social Security regulations set forth a five-step inquiry to determine whether a plaintiff

is "disabled" within the meaning of the Act. 20 C.F.R. § 416.920(a)-(f). The five-step inquiry requires the Commissioner to determine in sequence

> (1) whether the claimant is currently employed;
> (2) whether she has a severe impairment;
> (3) whether her impairment meets or equals one listed in Appendix 1 to Subpart P, Regulations No. 4;
> (4) whether the claimant can perform her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992). If a claimant satisfies steps one or two, she will be found disabled so long as she suffers from a listed impairment at step three. *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993). If the claimant does not suffer from a listed impairment at step three, and cannot perform her past work at step four, the burden shifts to the Commissioner to show the claimant can perform a job in the national economy at step five. *Id.*

The court reviews the final decision of the Commissioner under 42 U.S.C. § 405(g); *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). If the Appeals Council finds no basis to review the decision of the ALJ, the ALJ's findings constitute the final decision of the Commissioner. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). The court reviews the ALJ's findings of fact to determine whether they are supported by the whole record. *Wolfe*, 997 F.2d at 322. To that end, the findings of the ALJ as to any fact shall be conclusive if supported by

-6-

substantial evidence. *See* 42 U.S.C. § 405(g); *Cass v. Shalala*, 8 F.3d 552, 554-55 (7th Cir. 1993). The court will review the entire record, but it will not decide facts anew, re-weigh evidence, or substitute its own judgment for the Commissioner's. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993). The court only considers evidence which was before the ALJ. *Wolfe*, 997 F.2d at 322.

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence may be something less than the greater weight or preponderance of the evidence. *Young v. Sec. of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1993). The ALJ is not required to discuss every piece of evidence in the record; however, the reviewing court must be able to track the ALJ's reasoning to be assured important evidence was considered. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). This requires the ALJ to articulate her assessment of evidence which contradicts her final conclusion. *Id.* Consequently, the court is unable to review any decision which fails to discuss evidence conflicting with the ALJ's ultimate conclusion because the court will have no idea why the ALJ rejected the evidence. *Rohan*, 98 F.3d at 971; *Herron*, 19 F.3d at 33. The court reviews the legal conclusions of the ALJ *de novo*. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).

With this background in mind, the court will review the final decision of the Commissioner. Step one of the five-step inquiry requires the ALJ to determine whether the claimant is gainfully employed. The ALJ noted Johnson performed work activity after May 1, 2000, but she concluded this work did not rise to the level of substantial gainful activity. (Tr. 17.) Johnson does not object to the ALJ's findings at step one.

Step two requires the ALJ to determine whether the claimant has a "severe" impairment. Here, the ALJ concluded Johnson's impairments were severe. (Tr. 15.) Johnson does not quarrel with the ALJ's finding at step two.

Step three requires the ALJ to determine whether the claimant's condition meets the requirements or equals the severity contemplated for any impairment listed in Appendix 1 to Subpart P, Regulations No. 4. Whether a claimant's condition meets the requirements or equals a listed impairment is strictly a medical determination. 20 C.F.R. § 416.926(b); *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). The ALJ must consider all credible medical evidence. *Hickman*, 187 F.3d at 688. The extent to which a physician's statement is given weight depends upon the extent to which it is supported by acceptable clinical and laboratory diagnostic techniques. *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Here, the ALJ concluded the plaintiff's condition did not meet or equal any listed impairments. The ALJ concluded:

> [W]hile severe, [Johnson's] impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1 of Subpart P or Regulations No. 4.

(Tr., at 27.) Johnson contends this finding is not supported by substantial evidence because the ALJ does not explain *why* Johnson's impairments did not meet those Listings. But Johnson bears the burden of proof at this stage, and it is *her* burden to show her impairments met the impairments in the Listings. Because Johnson fails to point out which Listings she meets and how the evidence in the record shows this, the court is in no position to conclude the ALJ's finding at step three is not supported by substantial evidence.

Before an ALJ can consider steps four and five, she must determine the claimant's residual functional capacity ("RFC"). The RFC is what the claimant can still do despite her physical and mental limitations. 20 C.F.R. § 416.945(a); *Hickman*, 187 F.3d at 689. The RFC is used to determine the claimant's ability to engage in various levels of work (sedentary, light, medium, heavy, or very heavy). 20 C.F.R. § 416.967. The ALJ must consider the entire record when determining the claimant's RFC, including all relevant medical and *non*-medical evidence, such as the claimant's own subjective statements of what she is able or

-9-

unable to do. 20 C.F.R. § 416.945(a); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7thCir. 1995). The court will affirm the ALJ's RFC determination if it is supported by substantial evidence. *Pope*, 998 F.2d at 480.

Here, the ALJ made the following finding as to Johnson's RFC:

> Having reviewed the medical evidence and testimony, the undersigned believes that claimant retains the exertional demands of 'sedentary' work that does not require lifting and/or carrying more than 10 pounds, standing and or walking more than 2 hours, and sitting no more than 6 hours in a work day. Further, the claimant is restricted to work activities requiring only occasional climbing and stooping.

(Tr., at 27.)

Johnson contends the ALJ's RFC finding is not supported by substantial evidence, but she fails to show this. First, she fails to show the ALJ's finding that she could walk for more than 2 hours is not supported by substantial evidence. Johnson does not direct the court to any objective medical evidence which contradicts this finding; rather, she simply posits that it was erroneous for the ALJ to make this finding in light of her subjective complaints to her physicians and her testimony at the hearing concerning her leg pain and general inability to walk long distances. But the ALJ explained these subjective complaints and testimony simply could not be squared with the objective medical evidence and other non-medical evidence in the record. After reviewing the record, the court is

-10-

obliged to conclude the ALJ's determination in this regard was not patently wrong. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).

Second, Johnson fails to show the ALJ's finding that she could stand for 2 hours is not supported by substantial evidence. Neither the objective medical evidence in the record nor Johnson's own subjective complaints and testimony contradict this finding. It is true Johnson testified during the hearing she had problems "standing" during an 8-hour workday, but she never testified she could not stand for 2 hours per day. (Tr. 162, 169.)

Third, Johnson fails to show the ALJ's finding that she could lift and carry more than 10 pounds is not supported by substantial evidence. Neither the objective medical evidence in the record nor Johnson's own complaints to her physicians and testimony during the hearing contradict this finding. Johnson testified she generally had problems "lifting," but there is nothing in complaints to her physicians or testimony to suggest she could not lift as few as 10 pounds. (Tr. 169.)

Johnson fails to show the ALJ's conclusion that Johnson could sit for up to 6 hours in a work day or occasionally stoop and climb is not supported by substantial evidence. After all, Johnson testified at her hearing that she spent

-11-

most of her time watching television and reading--presumably while sitting. (Tr. 167-68.)

Finally, Johnson fails to show the ALJ's finding that she could perform sedentary work was not supported by substantial evidence for any other reason. Again, nothing in the objective medical evidence contradicts the ALJ's finding. Johnson contends her complaints to her physician and her testimony during the hearing show she was unable to perform sedentary work because of blurred vision, general body pain and abdominal pain in particular, and shortness of breath, but the ALJ found these complaints to be exaggerated. The ALJ discussed Johnson's complaints of blurred vision, but she noted the most recent eye examination showed Johnson had good eyesight and that the inflamation around her eyes had improved with medication. The ALJ discussed Johnson's complaints of general body pain and abdominal pain in particular, and she noted whenever Johnson had an examination, she was found to have a good range of motion in upper and lower extremities, ambulate without difficulty, and to have a normal station and gait. The ALJ discussed Johnson's complaints of shortness of breath, and she noted the examination of her lungs were normal. In addition the ALJ also found the non-medical evidence did not support her subjective complaints either. The ALJ found Johnson's claims that she was barely able to walk and move around the

-12-

house since May 1, 2000, to be inconsistent with the fact that she worked for 5 separate employers since that date–the most recent employer being a carwash where her job was to detail and wipe down cars 8-hours a day.  The ALJ further found the fact that Johnson had applied for and received unemployment benefits since May 1, 2000–an indication of an ability to work–was inconsistent with Johnson's claim that she was totally disabled.  Furthermore, the ALJ noted her findings that Johnson could perform sedentary work were backed up by 2 state agency medical examiners, both of whom concluded Johnson could perform a full range of *light* work.  Against this backdrop, the court is obliged to conclude it was not patently wrong for the ALJ to find Johnson was exaggerating when she claimed she was unable to perform sedentary work.  The ALJ's RFC finding is therefore supported by substantial evidence.

Step four requires the ALJ to determine whether the claimant is capable of performing her past relevant work.  Here, the ALJ concluded Johnson was unable to perform her past relevant work.  (Tr. 17.)  Johnson does not quarrel with this finding.

Step five requires the ALJ to show the claimant is capable of performing a job which exists in significant numbers in the national economy.  A claimant can perform a job in the national economy when the RFC assessment permits her to

-13-

"do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Regulation 96-8p.

Here, the ALJ determined Johnson had the ability to perform a significant number of jobs in the national economy:

> The vocational expert testified, that, in his opinion, [an individual of Johnson's age, work experience and RFC] would still be able to perform numerous sedentary jobs in the regional economy, including such jobs as inspector (approximately 370 jobs), assembler (approximately 2,100 jobs), and office clerk (approximately 1,200 jobs). This is a significant number of jobs.

(Tr., at 27.)

Johnson contends the ALJ's decision should be reversed because a hypothetical question posed by the ALJ to the vocational expert during the hearing presumed an individual had the ability to perform light exertional work whereas the ALJ found Johnson only had the RFC to perform sedentary work. Johnson's contention is unfounded. The vocational expert singled out more than 3,650 sedentary jobs which could be performed by an individual with Johnson's vocational profile. As such, the ALJ's finding that Johnson could perform a significant amount of jobs in the national economy is supported by substantial evidence.

-14-

One final matter: Johnson contends the ALJ's decision should be reversed and remanded because she failed to fully and fairly develop the record. The ALJ has a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" when the claimant is unrepresented, *Helcker v. Campbell*, 461 U.S. 81 (1983), but this court must respect the Commissioner's reasoned judgment as to "how much evidence to gather." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). Even if the Commissioner's decision not to obtain additional information was unreasonable, reversal is appropriate only if the claimant can show she was prejudiced by the ALJ's failure to obtain additional information. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000). In other words, the claimant must show the additional information might have led to a different outcome. *Id.*

Johnson presents the court with certain medical records she contends were never obtained by the ALJ even though they existed at the time the ALJ issued her decision. Johnson glibly disavows any responsibility for failing to submit these records to the ALJ before or during the hearing on account of her unrepresented status, but she shows no restraint in her criticism of the ALJ for not "bothering" to obtain these documents prior to her decision. The court cannot abide Johnson's blame-game tactics. Perhaps Johnson does not recall she refused to even

-15-

*explore* the possibility of obtaining counsel at little or no cost before the hearing commenced:

> ALJ: . . . Ma'am, have you obtained an attorney or representative to handle your case?
> CLMT: No, I haven't.
> ALJ: . . . There are various things an attorney or representative is able to do. *They can obtain documents, present argument, question witnesses.* There are legal services groups that can provide services at low or no cost. There are also private attorneys or nonattorney representatives that can handle Social Security cases. They can take the case some what's called a contingency-fee arrangement, and that's where the attorney or representative is not paid unless the claim is won. There's a maximum amount allowed by law for the fee. At this point, it's 25 percent or $5,300 of back benefits, whichever is less, and the fee would need to be approved by the Administrative Law Judge. Do you want additional time to try to obtain an attorney or representative or do you want to go ahead with the hearing today, acting on your own behalf?
> CLMT: I'll go on with the case.
> ALJ: You want to go ahead with the hearing today, correct?
> CLMT: Yes, I do. Yeah.

(Tr. 159-60 (emphasis added)). Perhaps Johnson does not recall telling the ALJ at the hearing that she did not want other records or documents added to the record:

> ALJ: All right. Do you have any objections to the documents in the file being admitted used by me to make a Decision in this case?
> CLMT: No, I don't.
> . . . .
> . . . .
> ALJ: Any other records, documents, you wanted to have included in this file?

-16-

     CLMT:  No.

(Tr. 160.) And perhaps Johnson has yet to appreciate the fact that on March 19, 2004, the ALJ requested "any and all medical records" from "January 2003 to the present" from Oelke, the physician who generated most of the documents the ALJ allegedly never "bothered" to obtain. (Tr. 131.) To be sure, while the ALJ has an obligation to make efforts to obtain these records, the court will not defer to these after-the-fact castigations of the ALJ's conduct when the claimant's exercise of prudence and reasonable diligence would have ensured inclusion of the questioned documents as part of the record. Under the circumstances presented here, the court cannot conclude the ALJ failed to fulfill her duty to obtain the important documents in this case; the blame lies elsewhere.

     But perhaps more to the point, the court concludes that none of the documents Johnson now presents to the court would have made a difference in the outcome of the ALJ's decision had the ALJ considered them. The documents reveal little more than Johnson received treatment for non-material impairments, was found on occasion to have a rash around her body, and suffered occasional swelling in her knee. None of this evidence would lead the ALJ to reverse course and find Johnson was unable to walk or stand for 2 hours a day or otherwise unable to perform sedentary work. In short, the evidence in these documents

would contribute nothing material to the mix of facts already in the record at the time the ALJ rendered her decision.

Accordingly,

IT IS ORDERED that the final decision of the Commissioner be and the same is hereby AFFIRMED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this __26th__ day of July, 2005.

BY THE COURT:

s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge

-18-